IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLES G.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 19 C 4822 |
| v. | ) |
| | ) Magistrate Judge Beth W. Jantz |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security,[2] | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Charles G.'s application for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [dkt. 12, Pl.'s Mem.] is denied, and the Commissioner's cross-motion for summary judgment [dkt. 18, Def.'s Mot.] is granted.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by his first name and the first initial of his last name.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi has been substituted for her predecessor.

**BACKGROUND**

**I.     Procedural History**

On April 21, 2016, Plaintiff filed a claim for DIB, alleging disability beginning January 1, 2010. [Dkt. 9-1, R. 13.] Plaintiff's claim was denied initially and upon reconsideration, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on April 26, 2018. [R. 13, 31-54.] Plaintiff personally appeared and testified at the hearing and was represented by counsel. [*Id.*] A vocational expert ("VE") also testified. [*Id.*] On July 25, 2018, the ALJ denied Plaintiff's claim, finding him not disabled under the Social Security Act. [R. 13-27.] The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner. [R. 1-6.]

**II.    The ALJ's Decision**

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process. [R. 14-23.] The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of January 1, 2010, through the date last insured, December 31, 2014. [R. 15.] At step two, the ALJ concluded that Plaintiff had the following severe impairments: status post bilateral knee replacement, status post bilateral hip replacement, degenerative disc disease of the lumbar spine, and rheumatoid arthritis. [*Id.* at 15-16.] At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Social Security Administration's listings of impairments (a "Listing"). [*Id.* at 16.] Before proceeding to step four, the ALJ determined that through the date last insured, Plaintiff retained the residual functional capacity ("RFC") to perform light work except he could occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds, occasionally balance, stoop, kneel, crouch, and

crawl, and occasionally work with moving mechanical parts with occasional exposure to vibration, although he could never work at unprotected heights. [*Id.* at 16-21.] Although the ALJ concluded at step four that through the date last insured, Plaintiff would be unable to perform his past relevant work as a plumber (heavy, skilled), he concluded at step five that Plaintiff could perform other jobs existing in significant numbers in the economy such as mail clerk, housekeeping/cleaner, or cafeteria attendant. [*Id.* at 21-22.] Accordingly, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time from January 1, 2010, through December 31, 2014. [*Id.* at 23.]

## DISCUSSION

**I.     Judicial Review**

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any substantial gainful activity during the period for which he claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform his past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a). "A finding of disability requires an affirmative answer at either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of

proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id.*

Because the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner and is reviewable by this Court. 42 U.S.C. § 405(g). *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). The Court plays an "extremely limited" role in reviewing the ALJ's decision. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id.* at 327.

The ALJ has a basic obligation both to develop a full and fair record and to "build an accurate and logical bridge between the evidence and the result [so as] to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837. Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The

4

ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413.

## II.     Analysis

Plaintiff argues that the ALJ committed reversible error in two ways. First, he asserts that the ALJ erred in giving greater weight to the opinion of the agency physician than his treating physicians, and second, he asserts that the ALJ erred in assessing his report of subjective symptoms and how they limited him. [Pl.'s Mem. at 5-12.] The Commissioner defends the ALJ's decision, arguing that the ALJ appropriately discounted Plaintiff's treating physicians' opinions as inconsistent with the record evidence, which included generally normal functional examinations and failed to substantiate Plaintiff's allegation of disability, and further appropriately weighed Plaintiff's statements of his subjective symptoms in conjunction with the record as a whole. [Dkt. 19, Def.'s Mem. at 2-12.] For all of the reasons explained below, this Court agrees with the Commissioner, and affirms the ALJ's decision.

### A.     Treating Physicians' Opinions

Plaintiff argues that the ALJ erred in evaluating the opinions of Plaintiff's treating physicians, Dr. Rick Singh and Dr. Max Harris, because: (1) they both had long-term relationships with him and Dr. Harris specializes in rheumatology, (2) they both provided explanations for their opinions in that they both referenced his diagnoses of osteoarthritis and rheumatoid arthritis, his four surgeries, and his ongoing symptoms, (3) their opinions were consistent with each other as well as with Plaintiff's and his wife's pre-hearing statements regarding Plaintiff's pain with

5

standing and walking; and (4) the reasons that the ALJ provided for discounting both opinions are not supported by the record. [*Id.* at 9-12.] The Commissioner argues that the ALJ reasonably discounted the opinions of Dr. Singh and Dr. Harris as inconsistent with the record as a whole, and that the ALJ adequately explained his reasoning in weighing the medical opinions as he did. [Def.'s Mem. at 2-8.] This Court agrees with the Commissioner's arguments.

A treating physician's opinion on the nature and severity of a medical condition is entitled to controlling weight if it is "well-supported" by medical findings and "not inconsistent with the other substantial evidence" in the record.[3] 20 C.F.R. § 404.1527(c); *see Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018). If a treating physician's opinion is not given controlling weight, the ALJ must determine what weight it merits by considering the following factors: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination; (3) the physician's specialty; and (4) the consistency and supportability of the opinion. 20 C.F.R. §404.1527(c); *Gerstner*, 879 F.3d at 263. An ALJ "must offer good reasons" for giving a treating physician's opinion less than controlling weight. *Stage v. Colvin*, 812 F.3d 1121, 1126 (7th Cir. 2016). If the ALJ discounts the physician's opinion after considering these factors, the court "***must*** allow that decision to stand so long as the ALJ minimally articulated his reasons—a very deferential standard that [the Seventh Circuit has] deemed lax." *Elder*, 529 F.3d at 415 (internal quotations omitted) (emphasis added); *accord Fair v. Saul*, 853 F. App'x 17, 21 (7th Cir. 2021).

The ALJ assigned little weight to the opinions of Plaintiff's treating physicians, Dr. Singh and Dr. Harris, who both opined that Plaintiff would be unable to stand for six hours in an eight-

---

[3] Although the Social Security Administration has since modified its treating-physician rule, Plaintiff's application was filed in 2016, and at that time, "controlling weight" was to be given to the well supported opinion of a treating physician. *See* 20 C.F.R. § 404.1527(b)(2) (for applications filed before March 27, 2017); 20 C.F.R. § 404.1520c (for applications filed on or after March 27, 2017).

hour day [R. 20-21 (citing R. 452-53)]—a limitation that would preclude the performance of light work. *See* Social Security Ruling 83-10 (S.S.A. 1983) (defining light work as requiring among other things the ability to stand for six hours in an eight-hour work day). Specifically, Dr. Singh opined that Plaintiff would be unable to stand for six hours out of an eight-hour day given his history of osteoarthritis and rheumatoid arthritis, as well as two knee replacement surgeries (in June 2010 and September 2013), and his two hip replacements (in November 2012 and June 2015), and he advised that he had treated Plaintiff since early 2011. [*Id.* at 452.] Dr. Harris opined that Plaintiff would be unable to stand for six hours out of an eight-hour day, noting Plaintiff's diagnosis of rheumatoid arthritis and polyarticular arthritis, and that despite treatments with several pain medications, Plaintiff had required knee and hip replacement surgeries, and he advised that he had treated Plaintiff since 2007. [*Id.* at 453.] Dr. Harris added that Plaintiff had intermittent recurring pain that was aggravated by activity, and that Plaintiff can be "somewhat stoical in his pain complaints[.]" [*Id.*]

In contrast, the ALJ assigned partial weight to the opinion of the state agency physician, Dr. Ranga Reddy, who opined that Plaintiff was limited to light work with additional limitations. [*Id.* at 20 (citing R. 55-64).] The ALJ assigned great weight to Dr. Reddy's opinion, because it was consistent with the record as a whole, including Plaintiff's surgical history, effective management of symptoms through medication, and testimony as to some continuing limitations. [*Id.*] But, the ALJ assigned little weight to Dr. Reddy's opinion that no environmental limitations should be placed on Plaintiff, because it conflicted with the record as a whole, including Plaintiff's hearing testimony which supported not only the postural limitations Dr. Reddy endorsed but also environmental limitations. [*Id.*] Accordingly, the ALJ explained that he formulated an RFC that limited Plaintiff to light work with additional limitations, including environmental, so as to "avoid

7

exacerbating the symptoms from his status post bilateral knee replacement, post bilateral hip replacement, degenerative disc disease of the lumbar spine, and rheumatoid arthritis[.]" [*Id.*]

The ALJ sufficiently articulated his reasoning in giving little weight to Dr. Singh and Dr. Harris's opinions by (1) noting each physician's treatment relationship with Plaintiff, and (2) considering each opinion's supportability and (in)consistency with Plaintiff's testimony as well as the medical evidence in the record. [R. at 20-21.] *See Pavlicek v. Saul*, 994 F.3d 777, 781 (7th Cir. 2021) (affirming ALJ's decision declining to give a treating physician's opinion controlling weight where substantial evidence supported the ALJ's finding that medical records, including the physician's own records, were inconsistent with the physician's opinion); *Collins v. Berryhill*, 743 F. App'x 21, 25 (7th Cir. 2018) ("In weighing a treating physician's opinion, an ALJ must consider the factors found in 20 C.F.R. § 416.927(c), but need only 'minimally articulate' his reasoning; the ALJ need not explicitly discuss and weigh each factor." (quoting *Elder,* 529 F.3d at 415)). The ALJ expressly acknowledged that Dr. Singh was Plaintiff's treating physician, that Dr. Harris was Plaintiff's treating rheumatologist, and that both had based their opinions on Plaintiff's diagnoses and surgical histories, and the ALJ juxtaposed their opinions to evidence in the record including Plaintiff's testimony and medical records. [*See* R. 20-21.] The ALJ's discussion thus makes clear that he sufficiently considered the relevant factors. *See Collins*, 743 F. App'x at 25; *Elder,* 529 F.3d at 415. Moreover, whether the treating physicians' opinions were consistent with each other does not change the Court's assessment, because substantial evidence supports the ALJ's finding that each opinion was inconsistent with the record as a whole, as discussed further below. [*See* R. 18-21.]

Critically, the ALJ afforded each treating physician's opinion little weight because they were not supported by the other record evidence, including medical records and Plaintiff's own

testimony. *See Pavlicek*, 994 F.3d at 781. With respect to Dr. Singh, the ALJ juxtaposed his opinion with the record as a whole, which showed Plaintiff's generally normal physical examination findings, including normal gait, normal range of motion, and normal muscle strength, as well as that Plaintiff effectively manages his rheumatoid arthritis symptoms with medication that had not changed since 1998. [R. 20-21.] The ALJ also compared Dr. Singh's opinion with Plaintiff's own testimony at the hearing that his surgeries had been "beneficial" for him, affording him relief. [*Id.* at 20, 41.] Substantial evidence therefore supports the ALJ's assessment. *See Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016).[4]

According to Plaintiff, however, the ALJ's reliance on his testimony was in error because Plaintiff also testified that he continued to have pain, and difficulty walking, kneeling, and standing. [See Pl.'s Mem. at 11 (citing R. 38-40, 42, 43).] The ALJ properly considered, however, Plaintiff's testimony that after at least a couple of his surgeries, he obtained 100% relief, and that "each surgery has been very beneficial, but they also have been restrictive, you know. But the pain is much - - much, much better." [R. 41.] Moreover, notwithstanding Plaintiff's assertion, he failed to cite records demonstrating complaints to his physicians of pain or limitations other than in the time period before his surgeries, or that otherwise contradict the ALJ's finding that the record as a whole was inconsistent with the limitations to which Dr. Singh opined. [*See* Pl.'s Mem. at 11; Pl.'s Reply at 2.]

---

[4] To the extent Plaintiff argues on reply that Dr. Reddy's opinion was not sufficient to support the RFC determination because he did not consider Plaintiff's rheumatoid arthritis, the argument is waived. *See Hernandez v. Cook Cty. Sheriff's Off.*, 634 F.3d 906, 913 (7th Cir. 2011) (skeletal arguments and arguments raised first on reply are waived). Moreover, Dr. Reddy referred to Plaintiff's rheumatoid arthritis in his assessment [R. at 55-64] and Plaintiff does not sufficiently explain why he asserts it was not duly considered.

Nor does Plaintiff's assertion that he only testified that the *swelling* and not the *pain* from his rheumatoid arthritis was managed with medication change this Court's assessment of the ALJ's analysis. As the ALJ observed, Plaintiff's rheumatoid arthritis medication had been unchanged since 1998, and Plaintiff testified that no doctor had ever recommended surgery, different injections, or other invasive treatment methods for his rheumatoid arthritis. [*See* R. 18.] Accordingly, as the ALJ reasoned, Plaintiff's effective management of his rheumatoid arthritis conflicted with Dr. Singh's opinion. Based on all of the above, the ALJ provided a sufficient basis for giving Dr. Singh's opinion less than controlling weight, and he adequately articulated his reasoning. *See Stage*, 812 F.3d at 1126; *Elder*, 529 F.3d at 415.

The Court is unpersuaded by Plaintiff's additional assertion that the ALJ erred in failing to explain what he believed was inconsistent between Dr. Singh's opinion and the objective findings in the record. First, the ALJ found Dr. Singh's opinion inconsistent with more than just objective findings, but also with Plaintiff's own testimony. [*See* R. 21.] Moreover, the ALJ specifically explained that Dr. Singh's opinion was inconsistent with records demonstrating Plaintiff's normal gait and generally normal extremity and spine examinations. [*See* R. 21.] No more was necessary to minimally articulate his reasoning in discounting the opinion. *See Fair*, 853 F. App'x at 21; *Elder*, 529 F.3d at 415.

Likewise, the ALJ provided a sufficient basis for giving Dr. Harris's opinion less than controlling weight, and he adequately articulated his reasoning. *See Stage*, 812 F.3d at 1126; *Elder*, 529 F.3d at 415. Here too, the ALJ observed that Dr. Harris's opinion was inconsistent with the record as a whole, which demonstrated that Plaintiff effectively manages his rheumatoid arthritis symptoms with medication, and inconsistent with Plaintiff's testimony "that his knee and hip pain were resolved with bilateral knee and hip replacements." [R. 21.] The ALJ further

10

reasoned that Dr. Harris's opinion was inconsistent with Plaintiff's reported ability to engage in many activities of daily living, and that Dr. Harris had "provided no specifics regarding [Plaintiff's] limitations in his ability to sit and walk." [*Id.*]

Plaintiff's challenge to the ALJ's assessment of Dr. Harris's opinion is similarly unpersuasive. For all of the same reasons discussed above, the ALJ reasonably compared the limitations as to which Dr. Harris opined with Plaintiff's testimony that his surgeries had provided him relief and that his medication effectively manages his symptoms. [*See* R. 20-21, 41.] Likewise, the ALJ considered Plaintiff's ability to complete many activities of daily living, including grocery shopping, preparing his own meals, handling his own personal care, and mowing the lawn with breaks, in light of Dr. Harris's opinion that Plaintiff's intermittent pain was aggravated by activity. [*See* R. 21, 453.] Although Plaintiff correctly notes that an ALJ may not equate a claimant's ability to engage in activities of daily life with the more rigorous demands of work, the ALJ did not do so here. Instead, he appropriately considered Plaintiff's daily activities in assessing the consistency and supportability of Dr. Harris's opinion. *See* 20 C.F.R. § 404.1527(c).

Nor is the Court persuaded by Plaintiff's additional argument that the ALJ failed to explain why he reasoned that Dr. Harris's lack of specificity regarding Plaintiff's claimed limitations in his ability to sit and walk affected the weight of his opinion. [*See* Pl.'s Mem. at 12.] Even if this aspect of the ALJ's reasoning was lacking, reversal would not be warranted because substantial evidence otherwise supported the ALJ's decision to discount the opinion. *See Pavlicek*, 994 F.3d at 782.

For each of these reasons, the ALJ provided a sufficient basis and adequately articulated his reasoning in giving Dr. Harris's opinion less than controlling weight. *See Stage*, 812 F.3d at 1126; *Elder*, 529 F.3d at 415.

### B. Plaintiff's Subjective Symptoms Statements

Plaintiff additionally argues that the ALJ erred in assessing Plaintiff's complaints of subjective symptoms and concluding that Plaintiff's symptoms were not as severe as he alleged prior to December 31, 2014, his date last insured. [Pl.'s Mem. at 5-8.] Specifically, Plaintiff contends that the ALJ's basis for discounting his allegations was inadequate because the ALJ mischaracterized Plaintiff's improvement with surgeries, and because the ALJ improperly relied on Plaintiff's daily activities and the objective evidence. [Pl.'s Mem. at 4.] According to the Commissioner, however, the ALJ reasonably evaluated Plaintiff's testimony in light of the record evidence, and adequately explained his reasoning in assessing Plaintiff's subjective statements. [Def.'s Mem. at 9-13.] This Court agrees with the Commissioner's arguments.

An ALJ's credibility finding is afforded "special deference" and will be overturned only if it is "patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (quoting *Eichstadt v. Astrue*, 534 F.3d 663, 667-68 (7th Cir. 2008)). "However, an ALJ must adequately explain his credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013); *see also Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (explaining that patently wrong "means that the decision lacks any explanation or support"). Indeed, "[A]n ALJ's adequate discussion of the issues need not contain a complete written evaluation of every piece of evidence." *Pepper*, 712 F.3d at 362 (internal quotation omitted). "So long as an ALJ gives specific reasons supported by the record, [the court] will not overturn his

12

credibility determination unless it is patently wrong." *Deborah M. v. Saul*, 994 F.3d 785, 789 (7th Cir. 2021) (internal quotation omitted).

Here, the ALJ adequately explained his reasons for discounting Plaintiff's subjective symptom statements, and reasonably concluded that the record evidence failed to support Plaintiff's allegation of disability. Specifically, the ALJ observed that although Plaintiff had undergone bilateral hip and knee replacement surgeries, he testified that those procedures had been beneficial and had provided him 100% relief. [R. 19.] He noted that Plaintiff had further testified that he manages his rheumatoid arthritis symptoms with medication that had not changed since his diagnosis in 1998, and that his doctors had not recommended any other or more invasive treatment. [*Id.*] The ALJ further observed that although Plaintiff had testified to using crutches prior to his hip replacement surgery, there was no evidence in the record to suggest that he continued to use an assistive device thereafter. [*Id.*] Similarly, the ALJ observed that Plaintiff had testified to needing some help with personal care prior to his surgeries, but that he needed no assistance thereafter, and indeed, that he performed his own activities of daily living, including going to church, preparing his own meals, and mowing his yard with breaks. [*Id.*] Finally, the ALJ specifically noted that Plaintiff continued to have normal gait and normal extremity examination findings throughout the record. [*Id.* at 18-19.] Upon this detailed discussion, the ALJ found the evidence largely inconsistent with Plaintiff's allegation of disabling limitations. Because the ALJ adequately explain his credibility finding by discussing these specific reasons supported by the record, he did not commit reversible error in assessing Plaintiff's symptom complaints. The ALJ's discussion reflects a careful consideration of Plaintiff's testimony in light of a thorough review of Plaintiff's medical records and evidence of Plaintiff's activities of daily living. [*Id.* at 17-20.]

13

According to Plaintiff, however, the ALJ's conclusion that Plaintiff adequately controlled his symptoms was illogical in light of the record of increasing interventions ultimately resulting in Plaintiff's multiple surgeries. This argument is not persuasive because the ALJ specifically addressed all of the evidence that Plaintiff points out. He simply did not assign it the significance that Plaintiff urges. *See Denton v. Astrue*, 596 F.3d 419, 426 (7th Cir. 2010). The ALJ described Plaintiff's bilateral knee and hip problems and corresponding replacement surgeries, and carefully assessed how those impairments had affected him both before and after his surgeries. [R. 17-19.] He further considered Plaintiff's testimony that medication managed his rheumatoid arthritis symptoms and that his surgeries had been beneficial in treating his pain, and he considered Plaintiff's similar reports in the underlying medical records. [*Id.*] The Court declines Plaintiff's invitation to substitute its own judgment for the reasoned consideration of the ALJ. *See Stephens*, 888 F.3d at 327; *L.D.R. v. Berryhill*, 920 F.3d 1146, 1151-52 (7th Cir. 2019) (reviewing court considers whether ALJ's determination is supported by substantial evidence and determined under correct legal standards; it does not reweigh evidence or substitute its own judgment for that of the ALJ).

Based largely on a stray comment by the ALJ at the hearing,[5] —which Plaintiff concedes is not binding on the Commissioner—Plaintiff further contends that the ALJ erred in failing to establish when Plaintiff was disabled and when he was not. [*See* Pl.'s Mem. at 6.] It was not the ALJ's burden, however, to show that Plaintiff is not disabled; rather, it was Plaintiff's burden to show disabling limitations from his severe impairments prior to the date he was last insured. *See Summers*, 864 F.3d at 527 ("It was [the plaintiff's] burden, not the ALJ's, to prove that she was

---

[5] In response to Plaintiff's testimony that he can no longer work in his previous position as a pipefitter, the ALJ stated, "[T]here's no doubt you're disabled now. The only issue, like I said, is prior to 2015." [*See* R. 45.]

14

disabled."); 20 C.F.R. § 404.1512 ("In general, you have to prove to us that you are blind or disabled.); 20 C.F.R. § 404.1509 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement.").

Similarly, the Court is unpersuaded by Plaintiff's assertion on reply that because the ALJ did not identify Plaintiff's failure to meet his burden of proof on duration as a basis for his determination, the Commissioner's argument in defending the ALJ's opinion on this ground is barred by *S.E.C. v. Chenery*, 318 U.S. 80, 87-88 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based."). [*See* Pl.'s Reply at 4-5.] To demonstrate disability, Plaintiff was obliged to show his inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A). The Commissioner's argument that the ALJ appropriately assessed Plaintiff's subjective symptom statements properly follows both the ALJ's assessment of the records and testimony regarding Plaintiff's limitations and other complaints before and after his surgeries, and his determination that Plaintiff had not met his burden. [*See* R. 18-19.]

Nor does Plaintiff's additional contention—that the ALJ improperly relied on a lack of objective evidence or Plaintiff's activities of daily living—change this Court's analysis. Although Plaintiff correctly notes that an ALJ may not discount a claimant's symptom statements solely because they are not substantiated by objective evidence, the ALJ did not do so here. "[T]he lack of objective support from physical examinations and test results is still relevant even if an ALJ may not base a decision solely on the lack of objective corroboration of complaints of pain."

15

*Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2013) (citing 20 C.F.R. § 404.1529(c), and *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006)).  Indeed, the Seventh Circuit has explained, "In making a credibility determination, '[a]n ALJ *should consider* elements such as objective medical evidence of the claimant's impairments . . . and treatment (including medication).'" *Deborah M.*, 994 F.3d at 789 (emphasis added) (quoting *Prochaska*, 454 F.3d at 738).  The ALJ's consideration of Plaintiff's medical records and analysis of the evidence of Plaintiff's condition both before and after surgery demonstrates his appropriate consideration of the objective records in assessing Plaintiff's statements.

Likewise, notwithstanding Plaintiff's contrary assertion, the ALJ appropriately considered Plaintiff's ability to engage in activities of daily living in assessing Plaintiff's testimony.  While Plaintiff correctly notes that an ALJ may not equate the ability to engage in household activities with the ability to hold a job outside of the home, the ALJ did not so here.  Rather, the ALJ correctly assessed Plaintiff's daily activities to determine whether they corroborated his claimed limitations, and he concluded that they did not.  "[I]t is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether 'testimony about the effects of his impairments was credible or exaggerated.'" *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016) (quoting *Loveless*, 810 F.3d at 508, and citing 20 C.F.R. § 404.1529(c)(3)(I) (agency considers daily activities to evaluate severity of claimant's symptoms)); *accord Deborah M.*, 994 F.3d at 791.

16

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment [dkt. 12] is denied, and the Commissioner's motion for summary judgment [dkt. 18] is granted. The Court affirms the Commissioner's final decision.

**SO ORDERED.**

Date: 1/31/2022

BETH W. JANTZ
United States Magistrate Judge